# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Antonio Vela Avalos,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:12-CR-00246-DAK<br><br>Judge Dale A. Kimball |

### INTRODUCTION

This matter is before the court on Defendant's Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant requests that the court grant compassionate release based on changes in the law regarding mandatory minimums, his rehabilitation, his health conditions, and the conditions he has faced while incarcerated during the COVID-19 pandemic. In his motion, Defendant requests an 18-month reduction in his sentence under the "extraordinary and compelling" framework articulated in United States v. Maumau, 993 F.3d 821, 831 (10th Cir 2021) (setting forth a three-part test that courts of this jurisdiction use in considering motions for compassionate release). Pursuant to General Order 20-019, the United States filed an opposition to Defendant's motion, and the United States Probation Office filed a recommendation that the court deny the motion. Defendant then filed a reply in support of his motion. The court considers the motion fully briefed and issues the following Memorandum Decision and Order.

## BACKGROUND

On April 29, 2012, Mr. Avalos and his two co-defendants were pulled over by Utah Highway Patrol. As the troopers investigated the stop, the trio fell under suspicion and the officers eventually searched the vehicle. During the search, the officers noticed that the screws connecting the sun visors to the roof were marred. Using a fiber-optic camera, one trooper examined the space between the roof and the headliner, discovering a vacuum-sealed package. Once the headliner was completely removed, three packages were discovered. These packages were field- and lab-tested; both tests were positive for methamphetamine. The three packages combined contained 1,086.6 grams (2.39 pounds) of methamphetamine.

Based on this discovery, Mr. Avalos and his co-defendants were arrested. Mr. Avalos was in a difficult position due to his history of drug convictions. His prior convictions include four controlled substance violations,[1] felony possession of stolen property, and a misdemeanor DUI. At that time, if Mr. Avalos was convicted, he would have faced a mandatory life sentence if the government filed notice of those prior drug convictions. With the possibility of a life sentence, Mr. Avalos accepted a plea deal in which he admitted to a violation of 21 U.S.C. § 841 in exchange for the government not seeking life.

During sentencing, even though the government did not seek mandatory life, Mr. Avalos' past convictions marked him as a career offender. This status resulted in a suggested sentencing range of 262 to 327 months imprisonment. Despite the suggested range, the court sentenced Mr.

---

[1] His prior drug convictions suggest that Mr. Avalos was involved in small-scale distribution. One conviction involved 13–14.5 grams of meth, another says a "small bag" of meth was uncovered but provides no weight, one describes "methamphetamine residue," and the last provides no description. (Presentence Investigation Report, ECF No. 155-1 at pp. 9–13 (sealed).)

2

Avalos to 168 months—eight years shorter than the suggested guidelines. (Judgment, ECF No 122.)

At the time of his arrest, Mr. Avalos was 46 years old. Now, a 54-year-old man, Mr. Avalos suffers from fairly typical conditions like hypertension, hypothyroidism, and knee, back, and shoulder pain. Less typical, however, Mr. Avalos suffers from a condition stemming from his past intravenous drug use. (BOP Medical Records, ECF No. 150-1 (sealed).)

While incarcerated, Mr. Avalos has been an exemplary inmate: he has not had any write-ups, has been stably employed, obtained his GED, taken additional coursework (including some college courses), and broken his addiction to methamphetamine. Additionally, Defendant complains that he has endured an unusually severe incarceration due to the COVID-19 pandemic. Specifically, Defendant alleges, that he has had to go weeks without showering, experienced isolating lockdowns, had limited family contact, and had limited access to recreational and educational programs because FCI Lompoc has been especially hard-hit by the pandemic.

As of the date of the United States Probation Office's filing its recommendation, Defendant has served nine years, two months, and 24 days (approximately 65%) of his 168-month (14 year) sentence. With good conduct time, it is anticipated that Defendant would be eligible for home detention on October 2, 2023, and release on April 2, 2024. (First Step Act Relief Eligibility Report, ECF No. 155 at p. 3 (sealed).) Upon his release, Mr. Avalos has a family network awaiting him. Mr. Avalos allegedly: (1) plans to live with his younger brother; (2) has a job with health benefits lined up; (3) plans to attend NA meetings; (4) has a family connection to a drug rehabilitation center that can provide him counseling; and (5) has a "mentor and accountability partner who can keep him focused." (Mot. for Compassionate Release, ECF

No. 149 at 11.) It is worth noting, Defendant has not supported any of these release plans with any documentation and the United States Probation Office has been unable to contact Defendant's brother to verify these plans. (*See* First Step Act Eligibility Report, ECF No. 155 at ¶ 13.)

## Discussion

"Federal Courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One exception is contained in 18 U.S.C. § 3582(c)(1). The First Step Act modified § 3582(c)(1)(A) to allow a federal prisoner to file a motion for compassionate release directly with the court after the defendant has exhausted administrative remedies with the Bureau of Prisons ("BOP"). *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). In this case, the United States does not dispute that Defendant meets the exhaustion requirement.

Under § 3582(c)(1)(A), a court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that "extraordinary and compelling reasons warrant such a reduction; and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Based on the plain language of this statute, the Tenth Circuit adopted a three-step test for granting a motion for reduction of sentence: "(1) the district finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *Maumau*, 993 F.3d at 831. The court will address each step in turn.

### 1. Extraordinary & Compelling Circumstances

In applying the first part of § 3582(c)(1)(A)'s statutory test, the Tenth Circuit held that district courts

> have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,' but [] this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to §§ 994(a)(2)(C) and (t).

*Id.* at 834. The Sentencing Commission has not issued a policy statement in response to the First Step Act's provision allowing Defendants to bring a motion for sentencing reduction directly with the court and the policy statement applicable to motions brought by the BOP is not applicable to direct motions. *Id.* at 835–37. Therefore, the Sentencing Commission's current policy statement does not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* at 837 (citation omitted).

Although there currently appears to be little constraining district courts from reducing pre-First Step Act mandatory sentences, the Tenth Circuit has explained that the fact that a defendant is serving a pre-First Step Act sentence—in that case a mandatory life sentence—"cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021). The court concluded "that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i)." *Id.* Additionally, the Tenth Circuit repeated that district courts do not have "carte blanche to retroactively apply" changes in sentencing minimums in every situation. *Maumau*, 993 F.3d at

5

838 (Tymkovich, C.J., concurring). Indeed, "[c]ases in which [the] circumstances warrant a finding of 'extraordinary and compelling reasons' should be relatively rare." *Id.*

In this case, Defendant argues that his circumstances are extraordinary and compelling due to: (1) changes in the law regarding mandatory minimums; (2) his rehabilitation; (3) his health conditions; (4) the conditions he has faced while incarcerated during the COVID-19 pandemic. The court will address each in turn and then determine whether Defendant's circumstances, as a whole, are extraordinary and compelling.

First, it is indisputable that there have been substantial changes to the law since Defendant accepted his plea deal. When Defendant was charged, he faced a potential mandatory life sentence under the then-existing mandatory minimums. Under the current law, Mr. Avalos would not face such a threat. Now, if a person has two qualifying prior convictions, that person would only face a 25-year minimum. Moreover, under the current law, Mr. Avalos' prior convictions would not be considered qualifying prior offenses. Under the relevant statute, a felony drug offense sufficient to face the 25-year minimum must be a "serious drug felony." *Compare* 21 U.S.C. § 841( b)(1)(A)(viii) (2021) (tying mandatory minimums to a "serious drug felony") *with* 21 U.S.C. § 841 (b)(1)(A)(viii) (2012) (tying mandatory minimums to a "felony drug offense"); *see also* 21 U.S.C § 802 (44) (defining a "felony drug offense" as any offense that is "punishable" by more than one year imprisonment for a drug-related crime); 21 U.S.C. § 802 (57) (defining "serious drug felony" as an instance where "the offender served a term of imprisonment of more than 12 months," the offense was "within 15 years of the commencement of the instant offense," and meets the requirements of 18 U.S.C. § 924(e)(2)). Furthermore, for a "serious drug felony" or "offense" to be sufficient for the mandatory minimum, it must be an

offense that carries "a maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A)(ii).

In Mr. Avalos' situation, none of his prior convictions would qualify. His prior convictions were for small possession or distribution offenses, punishable by, at most, four years. *See* Cal. Health & Safety Code § 11351 (2001); *see also* ECF No. 149-2 (attaching a copy of the California code). Thus, the evidence shows that Mr. Avalos—were he charged and sentenced today—would only face the mandatory minimum of five years for having more than five grams of methamphetamine. *See* 21 U.S.C. § (b)(1)(B)(vii).

Second, Defendant argues that he has been rehabilitated over his nine years of incarceration, adding to his extraordinary and compelling circumstances. Most importantly and compelling, Mr. Avalos notes that the long time spent in custody has allowed him to overcome his addiction to methamphetamines. Such an addiction is very difficult to overcome and the court applauds his recovery. Additionally, Mr. Avalos has not had any write-ups while incarcerated, has been stably employed, and completed his GED and other educational courses. Again, these are commendable achievements. These accomplishments most certainly move the needle toward a finding of compelling and extraordinary circumstances.

Third, Defendant argues that his health conditions and age support a finding of compelling and extraordinary circumstances. Mr. Avalos is now 54 years old and would be 57 if released on good time credit. He currently suffers from a handful of conditions that the court is unconvinced support a finding of extraordinary and compelling circumstances. For example, Defendant's hypertension, hypothyroidism, and knee, back, and shoulder pain seem fairly routine and ordinary for a 54-year-old and there is no evidence these ailments have impacted his outlook or day-to-day activities. Defendant's ailment related to prior intravenous drug use is

different. This disease is fairly uncommon and can lead to life-threatening and chronic health problems. The court is persuaded that Defendant's ailment related to his intravenous drug use adds to a finding of extraordinary and compelling circumstances. This ailment alone, however, would not be sufficient for the court to make a finding of extraordinary and compelling circumstances.

Fourth, Defendant argues that his experience of being incarcerated at FCI Lompoc "has been far more extreme" than other incarcerated inmates' experiences and that lends further support to a court's finding of extraordinary and compelling circumstances. Specifically, Defendant alleges that he was

> [k]ept in [his] cell and cut off from the outside world to a degree usually only imposed as a punishment. Indeed, he was sometimes forced to go weeks without showering. But while Mr. Avalos has had to endure these restrictions that, while not intended to be so, have essentially functioned as additional punishment, he has not received any credit for doing so.

(Mot. for Compassionate Release, ECF No. 149 at 10.) The court is unconvinced that this argument adds weight to a finding of extraordinary and compelling circumstances. Defendant's plight, while certainly unfortunate, does not seem to fall into the type of circumstances that courts consider in motions for compassionate release. Defendant also did not cite any case law to support his argument that these circumstances while incarcerated during the pandemic are properly considered in this context. Additionally, Defendant provided no record or evidence that would help the court evaluate how severe Defendant's incarceration has been as compared to his peers. Without such evidence or legal support, the court does not find this adds to Defendant's assertion that his circumstances are extraordinary and compelling.

Now that the court has evaluated each of Defendant's claims, it must consider whether, as a whole, these circumstances satisfy the extraordinary and compelling standard. Candidly, the

court has struggled with this decision; it is a close call. Nevertheless, the court finds that the totality of Defendant's circumstances are extraordinary and compelling for five reasons.

First, it is indisputable that Defendant's sentence—or threat of a sentence—would not be as severe today as it was when he was charged. Second, Defendant is now 54 years old and has spent the last nine years incarcerated—which is four years more than the mandatory minimum he would face were he sentenced today. Third, during those nine years of incarceration, Mr. Avalos has been a model inmate, obtaining his GED, never being disciplined, and maintaining stable employment. These are uncommon rehabilitative steps for an inmate to take, especially at his age. Fourth, Defendant's recovery from his methamphetamine addiction strongly weighs in favor of the court's finding. Recovering from this addiction is extraordinary and compelling by any standard. Fifth and lastly, Defendant's ailment caused by intravenous drug use further adds to the court's finding. As a 54-year-old, Defendant's condition, although not now debilitating, can be serious and lead to declining health as he ages.

While none of these five considerations alone are sufficient to warrant a reduction in sentence, the totality of Defendant's circumstances persuades the court that it should grant his motion. Specifically, the court notes that "the 'gross disparity' between [] sentences [imposed] and the sentences Congress now believes to be an appropriate penalty for [a] defendant's conduct," "excellent institutional records," "substantial steps toward rehabilitation," and the length of time that a defendant has "already [] served" are all factors that courts have found to amount to extraordinary and compelling circumstances. *See United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020); *see also McGee*, 992 F.3d at 1046–47 (citing *McCoy* favorably). As noted, all these factors are present here plus Defendant's health condition. Accordingly, the court finds Defendant has demonstrated extraordinary and compelling circumstances.

### 2. Sentencing Commission's Applicable Policy Statements

Since the court has found that Defendant's circumstances are extraordinary and compelling it must make explicit findings regarding the applicable guidelines. *See McGee*, 992 F.3d at 1043 (noting that "when a district court grants a motion for compassionate release, it must of course address all three steps." (citation omitted)). In addressing the second step, the Tenth Circuit has found that the "sentencing Commission's existing policy statement is applicable only to motions for sentence reduction filed by the Direct of the [Bureau of Prisons], and not to motions filed directly by defendants." *Id.* at 1050. Since the Defendant filed his motion, the court is not constrained by the Sentencing Guideline's policy statements. Accordingly, the second step is satisfied because there are no applicable policy statements. *See Id.*

### 3. Section 3553(a) Factors

In the third, required step in motions for compassionate release, the court must "consider[] the factors set forth in § 3553(a), to the extent that they are applicable." *Maumau*, 993 F.3d at 831. The court considers the following section 3553(a) factors to be relevant here:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
                                              \*\*\*
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

18 U.S.C.A. §§ 3553(a)(1)–(2), (6). Here, Defendant is only requesting an 18-month reduction in his sentence. Thus, the court considers only whether an 18-month reduction is consistent with these factors. The court is persuaded that reducing Defendant's sentence by 18 months is appropriate under section 3553(a).

First, the court is persuaded that 150 months is more than enough to reflect the seriousness of Defendant's offense, promote respect for the law, and provide punishment. This is evidenced by the fact that Defendant would now only face a mandatory minimum of five years were he sentenced today and by Defendant's substantial rehabilitation. Second, the court finds that reducing Defendant's sentence by only 18 months does not undermine any deterrent effect that 150 months imprisonment would have. It is hard to imagine that an additional 18 months after spending 150 months in prison would add any deterrent effect. Third, given Defendant's history, there is no evidence that he was a violent offender that now poses a threat to the community. Defendant's past crimes were all seemingly related to his addiction to methamphetamines. Now that he has kicked that addiction, the court is persuaded he is not a threat to the community. Fourth, there is no further need for Defendant to be incarcerated for correctional treatment, educational or vocational training, or medical care. Indeed, Defendant has already completed a substantial amount of these courses available to him. Fifth, and lastly, there is no sentencing disparity. Defendant received a comparable sentence to his similarly-involved co-defendant. (ECF No. 89 (sentencing one co-defendant to 180 months' imprisonment); ECF No. 129 (sentencing the other co-defendant to 12 months probation).) Defendant's sentence was already one year shorter than his co-defendant and Defendant demonstrated that his circumstances are extraordinary and compelling. Thus, to deny Defendant's motion because one

of his co-defendants would have a longer sentence strikes the court as unjust given Defendant's progress and circumstances.

For the foregoing reasons, the court finds that an 18-month reduction in Defendant's sentence is consistent with the section 3553(a) factors.

### CONCLUSION

For the foregoing reasons, the court GRANTS Defendants Motion for Compassionate Release. (Mot. for Compassionate Release, ECF No. 149.) Defendant has demonstrated that his circumstances are extraordinary and compelling and consistent with the section 3553(a) factors. Accordingly, the court reduces Defendant's sentence by 18 months.

DATED this 16th day of August, 2021.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge